**Patrick B. BAYLESS, Plaintiff-Appellant,**

v.

**PHILADELPHIA NATIONAL LEAGUE CLUB a/k/a the Philadelphia Phillies, the Vet Stadium, Defendant-Appellee.**

No. 77-2042.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) April 26, 1978.

Decided June 5, 1978.

---

38

John I. McMahon, King of Prussia, Pa., for plaintiff-appellant.

Gerald A. Dennehey, Charles W. Craven, Marshall, Dennehey & Warner, Philadelphia, Pa., for defendant-appellee; Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and STERN,* District Judge.

## OPINION

STERN, District Judge.

This diversity action presents the question whether the Pennsylvania two-year statute of limitations bars an action by one who did not discover the cause of his injury within the two-year period. Because there exist genuine issues of material fact as to when the limitations period began to run, we reverse the summary judgment granted the defendant.

The facts, considered in the light most favorable to the plaintiff, are as follows. Upon his graduation from high school in 1966, Patrick Bayless was hired as a baseball pitcher by the defendant Philadelphia National League Club, popularly known as the Philadelphia Phillies. In May of 1971, while playing on a Phillies' minor league team, Bayless began to experience severe pain in the lumbar-sacral area of his back and in his right leg. He complained to the team trainer and physician who treated him by administering massive doses of the pain-killing drugs, Decadron, Xylocaine, and Butazolidin. He claims to have been compelled to pitch while in a drug-induced stuporous condition. Bayless's pitching performance deteriorated. On August 12, 1971, the Phillies gave him his unconditional release.

Within thirty days, Bayless collapsed; an emergency laminectomy was performed. Nonetheless, he continued to suffer pain in his back. In September of 1971, Bayless began to exhibit erratic behavior and to suffer from severe depression. He was thereafter confined in state mental institutions on numerous occasions and has been diagnosed as a paranoid schizophrenic. He alleges that this condition was triggered by the drugs he was administered. He seeks damages from the Phillies for injuries associated with his back condition and for the mental illness he has suffered.

* Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

On October 15, 1976, more than five years after ingesting the drugs but, or so he claims, less than two years from the time that he discovered that it was the drugs that caused his mental illness, he filed this action. The defendant moved for summary judgment on the grounds that the action was barred by the Pennsylvania statute of limitations and by Pennsylvania workmen's compensation law.

The district court ruled that Bayless's claims arising out of his back condition and those involving his mental illness were both governed by Pennsylvania's two-year limitations period for personal injuries, but it treated the two claims separately. It held that the cause of action based upon the back injuries arose no later than September 12, 1971, the date on which Bayless underwent the emergency laminectomy. It was then that Bayless knew of his back injury, and the district court held this was more than two years prior to filing the present suit. Thus, the court held that this claim was time-barred. Bayless does not challenge this aspect of the trial court's ruling on appeal.

With respect to the claim for mental illness, the trial court ruled that the limitations period began to run "when plaintiff knew or reasonably should have discovered the extent of his mental illness." The court ruled that this occurred no later than January 23, 1973, the date on which Bayless was discharged from Napa State Hospital diagnosed, according to hospital records, as a paranoid schizophrenic. In other words, the court held that the limitations period began to run when Bayless learned that he suffered from a mental illness. Accordingly, the court held that this claim was barred as well. It did not consider the alternative ground raised by the defendant on its motion for summary judgment, that plaintiff's claims were barred by the Pennsylvania Workmen's Compensation Act. We therefore do not reach this here.

■ The Pennsylvania statute of limitations for personal injuries, Pa.Stat.Ann. tit. 12, § 34 (Purdon) reads, in relevant part:

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; . . .

Our task is to decide when the limitations period commences to run. The court below held that it runs from the moment that the injury is known to the plaintiff, in this case, from the moment he knew of his mental illness. We hold that the rule in Pennsylvania is that the limitations period begins to run from the time that the plaintiff knows or reasonably should know the cause of his injury.

Analysis begins with the case of *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). Plaintiff Ayers underwent surgery for an ulcer in 1948. He was discharged within two weeks but he continued to suffer pains in his abdomen. In January of 1957, he returned to the hospital for tests. At that point it was determined that the surgeon who had performed surgery nine years earlier had left a sponge in his body. Defendant raised the statute of limitations as a bar; the trial court granted summary judgment in its favor. The Pennsylvania Supreme Court reversed, holding that the statute of limitations did not begin to run until Ayers knew, or by the exercise of reasonable diligence, could have learned of the presence of the foreign substance within his body. Because Ayers had averred that he did not become aware of the sponge until January 1957, and he had filed suit within two years of that date, the Court held that he was entitled to go to trial on his claims.

In *Irrera v. Southeastern Pennsylvania Transportation Authority*, 231 Pa.Super. 508, 331 A.2d 705 (1974), plaintiff suffered a fall due to a hole in a street surface. Pennsylvania law required that a notice of claim be filed within six months. Plaintiff gave notice more than six months after the accident, but within six months after ascertaining that the defendant was responsible for road maintenance. The court equated the

notice statute with a statute of limitations. After discussing *Ayers* and *Daniels v. Beryllium Corp.*, 227 F.Supp. 591 (E.D.Pa. 1964), it stated:

> From these cases it appears that the rule that best manifests the legislature's intent . . . is that time begins to run on the date of the injury unless, because of fraud or concealment by the authority, *or in spite of reasonable diligence by the claimant, knowledge of the negligence or its causes cannot be discovered until after the six month period.*

231 Pa.Super. at 520, 331 A.2d at 710 (emphasis added). Because there was no evidence in the record to suggest that plaintiff could not have learned of the defendant's responsibility had she exercised reasonable diligence, summary judgment in defendant's favor was affirmed.

The *Daniels* case, which was cited with approval in *Irrera*, stands directly for the proposition that the statute of limitations does not begin to run until the plaintiff, in the exercise of reasonable diligence, could have discovered that his injury was *caused* by the defendant. In *Daniels*, plaintiff brought suit for beryllium poisoning caused by contamination of the atmosphere by defendant's manufacturing plant. Plaintiff first became ill in 1943, but her illness was not diagnosed as beryllium poisoning until 1953, and she did not bring suit until 1958. The court held that the statute began to run not when her symptoms first appeared, and not when the diagnosis was made, but rather when plaintiff should have known of the causal connection between her illness and defendant's activities. This was deemed to be a jury question.

Judge Higginbotham, now a member of this Court, had earlier interpreted Pennsylvania law in this manner in a wrongful death action. In *Gemignani v. Philadelphia Phillies National League Baseball Club, Inc.*, 287 F.Supp. 465 (E.D.Pa.1967), the deceased, like Bayless, played for the Phillies. In 1959 an examination by one of the Phillies' team physicians revealed a symptomatic blood condition. Nevertheless, the deceased was not treated, nor was he informed of his malady. In August 1960 he was hospitalized because of a serious kidney problem. He died as a result of uremic kidneys on September 3, 1960. On August 31, 1962, plaintiff instituted suit on the theory that the Phillies' failure to treat or to advise the deceased more than two years earlier permitted his condition to develop into one which was terminal.

Notwithstanding that the defendant's allegedly wrongful acts or omissions occurred in 1959, more than two years before suit was filed, the court ruled that the action was not time-barred. It framed the dispositive issue as follows: whether the statute of limitations begins to run from the date on which the plaintiff knows facts from which, through the exercise of reasonable diligence, he could learn the cause of the injury; or whether the statute begins to run from the time the plaintiff, through the exercise of reasonable diligence, should have learned both the facts in question and that those facts bore some causative relationship to the injury. The court opted for the latter view.

> It is true that in [*Byers v. Bacon*, 250 Pa. 564, 95 A. 711 (1915); *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959); *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959)], the courts spoke in terms of discovery of facts. However, it is also clear from reading those cases that discovery of the causative facts *necessarily* gave use, *simultaneously* to discovery of the causative relationship. Moreover, it would require the most narrow reading of the language of those cases and the ignoring of the policy basis thereof to fail to recognize that "discovery of the cause of harm" must comprehend discovery of both the facts or occurrences and also discovery of reason to believe that those facts might bear a causative relationship to the harm.

287 F.Supp. at 467 (emphasis in original). Because the record was devoid of any evidence that prior to August 31, 1960, plaintiff reasonably suspected or should have reasonably suspected that the examination, the facts which it revealed, and the failure

**41**

of the Phillies to either treat the condition or to inform deceased's family about it were causally connected to the deceased's terminal illness, the suit was deemed timely. See also *Landis v. Delp,* 327 F.Supp. 766 (E.D. Pa.1971). *Contra: Aguado v. Koutsoubos,* 68 Pa.D. & C.2d 727 (1974).

■ We think that *Gemignani* accurately states the law of Pennsylvania. If common sense and reason dictate that the limitation period is not to run at least until a plaintiff knows that he has been hurt, see *Ayers v. Morgan, supra,* 397 Pa. at 284–285, 154 A.2d at 789, then it should not run until he can reasonably determine what or who hurt him. Ordinarily, the two events will occur simultaneously, but this need not always be so. There are cases where one knows of an injury, but not its cause. This may be such a case.

■ The record here shows that Bayless began to develop symptoms of mental illness in September of 1971. His condition became so serious that he was institutionalized as early as 1972. According to the record, however, the first suggestion that Bayless's mental condition might have been *caused* by his ingestion of pain-killing drugs is a Neurology Clinic Consultation Report, dated January 15, 1973, prepared by a physician one week prior to Bayless's release from the Napa State Hospital in California. This report states, in part, "One thought to keep in mind could be a toxic reaction to some of the drugs such as Butazolidin which does at times cause rather severe mental disturbances." The report, on its face, is titled "Confidential Patient Information." There is nothing in the record to suggest that its contents were disclosed to the plaintiff or that the report was made available to him. In any event, under the circumstances of this case, the question when Bayless knew or should have known that his mental illness resulted from the Phillies' treatment of his back complaint is for the jury. *See Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959). *Cf. Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3rd Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The order of the district court granting summary judgment to the defendant will therefore be reversed and the case will be remanded for further proceedings.