**Carolyn PLACE and Edward Place, Plaintiffs,**

v.

**ORTHO PHARMACEUTICAL CORPORATION, Defendant.**

**Civ. A. No. 83–227 ERIE.**

United States District Court, W.D. Pennsylvania.

Oct. 17, 1984.

Andrew J. Conner, Erie, Pa., for plaintiff.

Robert C. Tucker, Cleveland, Ohio, James D. McDonald, Jr., Erie, Pa., for defendant.

## OPINION

WEBER, District Judge.

This is a diversity product liability case arising out of plaintiff's exposure to an intra-uterine device (IUD) known as Lippes Loop, manufactured and sold by defendant Ortho Pharmaceutical Corporation. Suit was commenced on June 15, 1982 by a writ of summons in the state court. A complaint was filed on July 21, 1983, and thereafter the case was removed to this court.

Defendant has moved for summary judgment based on the bar of the Pennsylvania two year statute of limitations in personal injury actions. In an action such as this, where the cause of an injury or disease may not be readily apparent, the Pennsylvania courts apply the "discovery rule", under which the two years begin to run from the time that the plaintiff knows or reasonably should know the cause of an injury or disease. *Bayless v. Philadelphia National League Club*, 579 F.2d 37 (3d Cir.1978); *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959).

Of course, this "discovery rule" has accumulated a considerable gloss of judicial interpretation. The case law has developed the requirements that before the two year bar can be applied, the party asserting the defense must show;

(1) that claimant knew of the injury or disease; and

(2) that claimant knew of the operative cause of the injury or disease; and

(3) that claimant knew of the causal connection between the injury and the medical device involved more than

two years before commencing the lawsuit.

*See, O'Brien v. Eli Lilly Co.*, 668 F.2d 704, 706 (3d Cir.1981), and its analysis of the cases cited therein, particularly *Volpe v. Johns-Manville Corp.*, 4 P.C.R. 290 (Phila.Co. CP 1980).

With these standards set, and mindful that the statute of limitations is an affirmative defense on which the proponent has the burden of proof, and further mindful that on a motion for summary judgment all inferences are to be construed in favor of the non-moving party, *Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75 (3d Cir.1979), we will consider the evidence as submitted by the parties to determine whether there exists a genuine issue of material fact with respect to these requirements which precludes summary judgment.

The moving party relies entirely on the deposition testimony of wife-plaintiff. The plaintiff relies on her extensive affidavit and supporting medical and hospital reports.

There is little dispute as to the chronology of events here. In 1972 a Lippes Loop intra-uterine device (IUD) was inserted into wife-plaintiff by Dr. Hipps, her family physician. She only knew it by the description "Loop IUD". It remained in place for several years without trouble.

In December 1977 she experienced nausea and flu-like symptoms and consulted Dr. Hipps who gave her a diagnosis of gall bladder problems or flu. Her symptoms worsened and she returned to Dr. Hipps' office where she was given an internal examination by a paramedic. He told plaintiff that the IUD had moved out of position and had punctured the wall of the vagina. She was given antibiotics and told to return the next day for an examination by Dr. Semple, a gynecologist. On December 28, 1977, Dr. Semple examined her, removed the IUD and directed her to report to his office for further care. She was admitted to a hospital under Dr. Semple's care on January 12, 1978 for further diagnostic work. An abdominal hysterectomy was

planned but postponed because plaintiff had pneumonia and she was discharged from the hospital with orders to return on January 31, 1978. Dr. Semple performed exploratory surgery, opened and drained a tubovarian abscess, but did not perform a hysterectomy. She was discharged from the hospital on February 11, 1978 and continued under out patient care by Dr. Semple until July 4, 1978. She was referred by Dr. Semple to Dr. Leach, a urologist, for consultation during this time.

According to plaintiff's affidavit the above series of events ended in a recovery from the symptoms in 1978. However, it is with reference to this period that defendant relies in establishing plaintiff's knowledge to bring the "discovery rule" into operation.

From page 50 through page 53 of her deposition plaintiff admitted that on December 27, 1977 she was told that the IUD had moved in her cervix and had punctured the vaginal wall; that on the next day she saw Dr. Semple, a gynecologist; that she was given antibiotics for the infection resulting; that on December 28, 1977 Dr. Semple confirmed that she had a severe pelvic inflammation in the cervix; that the IUD had come down through the wall of the vagina and that he was going to remove it, which he did. He put her on antibiotics and arranged for a hospital admission.

In light of these admissions by plaintiff there can be no doubt that plaintiff was aware that the IUD had punctured the wall of the vagina, that she had an infection because of this, and that the infection led to hospitalization, exploratory surgery and drainage of the infected area.

It is sufficient that the plaintiff know the cause or source of her injury; it is not necessary that she know the legal basis for the prospective claim. *U.S. v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *DeMato v. Turner & Newell*, 651 F.2d 908 (3d Cir.1981), affirming p.c. 516 F.Supp. 114 (E.D.Pa.1980). Knowledge of defendant's negligence is not

a required element of the discovery rule. *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983).

■ We conclude therefore, that the two year statute of limitations under the discovery rule began to run in January 1978 on all immediate consequences of the movement of the IUD, the puncture of the vaginal wall, and the resultant infection and treatment. Action on all these matters would be barred after January 30, 1980.

However, we find a second cause of action that is not so barred.

According to the plaintiff's affidavit she began developing new internal symptoms in November 1979, and for the next eleven months she had several hospital admissions under the care of a variety of medical specialists, including an internist, two general surgeons, a gastric specialist, and others. The general diagnosis for these admissions included chronix hepatitis, cause unknown, and chronic colocystitis. A colon resection was performed.

These medical episodes from November 1979 through October 1980 appear to be different from those experienced from December 1977 through July 1978. Whether or not they are related to the IUD appear to be contested issues of fact. There is no evidence in this record that supports any conclusion that the uterine problems of 1977 and 1978 and the gastric problems of late 1979 and 1980 were the product of the same chain of causation. Plaintiff may contend that the two conditions were caused independently by the same IUD.

■ Plaintiff is not entitled to a new limitations period to begin with the appearance of each new injury or complication. The limitations period begins to run when damage is inflicted which is "physically objective and ascertainable." *Ragan v. Steen*, 229 Pa.Super. 515, 520, 331 A.2d 724 (1974). Although the limitations period is tolled until an action is discoverable, once that occurs and the cause of action has become a reality, the injured party may not then sleep on that cause of action until further injuries appear. An injured party "may not unduly postpone an action until the full extent of his damage is ascertained." *Shadle v. Pearce*, 287 Pa.Super. 436, 441, 430 A.2d 683 (1981); *Caldwell v. A.H. Robins Co.*, 577 F.Supp. 796 (W.D.Pa. 1984), *aff'd* 3d Cir., May 25, 1984, 735 F.2d 1347. While *Shadle* noted a different result for a separate and distinct injury, 287 Pa.Super. p. 441, n. 3, 430 A.2d 683, in *Caldwell* we noted at p. 798, f.n. 1, that we "conclude[d] that plaintiff's alleged injuries are sufficiently similar, all arising with plaintiff's reproduction organs, that they do not justify any exception to the holding described above." However, the nature of the complaints, diagnoses, and treatments between the two episodes in the present case differ.

■ It is still a genuine issue of material fact whether plaintiff knew that she might have a claim against the manufacturer of the IUD for her illness of November 1979 to October 1980. Her suit was filed June 15, 1982, and the statute would bar injuries or disease manifested before June 15, 1980, unless the causal element were discovered later. There is no evidence in this record to establish that the plaintiff knew or by the exercise of reasonable diligence should have known that the symptoms which she began to suffer in November 1979 and which caused her to be hospitalized for substantial periods through October 1980 were related to the IUD. While both diseases may be attributable to the same exposure, they are separate and distinct. There is nothing here to show that the second disease could be a reasonably certain consequence of the first such as to allow damages for future consequences in a timely suit for the first injury, or in the alternative to deny recovery on the second illness because of an award in a suit on the first illness.

Because plaintiff has set forth distinct and separable causes of action, suit on the second illness would not be barred by the statute of limitations. *See, Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982); *Goodman v. Mead Johnson*

*& Co.*, 534 F.2d 566 (3d Cir.1976). A genuine issue of material fact exists.

An appropriate order will be entered.

ORDER

AND NOW this 17 day of October, 1984, having reviewed defendant's motion for summary judgment and plaintiffs' response thereto and the supporting evidentiary material,

IT IS ORDERED that in the trial of the within action claims for damages for wife-plaintiff's illness during 1977 and 1978 are barred by the statute of limitations, but that the action may proceed on the claims for illness and disability beginning November 1979 and thereafter in accordance with Fed.R.Civ.P. 56(d).